IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | 3:12-CV-4737-P |
| KENNETH J. HENRY AND HILL COUNTRY FARMS, INC. | § § § § | |

## ORDER

Now before the Court is the United States of America's Emergency Motion for Turnover Order, filed on August 26, 2015. Doc. 40. The Court ordered expedited briefing on this motion, Doc. 44, but no response was filed. On September 3, 2015, with leave of the Court, the United States Equal Employment Opportunity Commission filed its amicus curiae brief in support of the United States' Emergency Motion for Turnover Order. Doc. 45. After reviewing the parties' briefing, the evidence, and the applicable law, the Court GRANTS the United States' Emergency Motion for Turnover Order.

### I.   Background

On July 20, 2011, The United States of America was awarded a judgment in *United States Department of Labor v. Hill Country Farms, Inc.*, case number 3:09-cv-162, in the United States District Court for the Southern District of Iowa against Kenneth J. Henry and Hill Country Farms, Inc. ("HCF") (collectively, "Defendants") for $1,761,554.34, plus post-judgment interest. (the "judgment"). Doc. 41-1 at 14. The judgment was registered in the United States District Court for the Northern District of Texas on October 11, 2011 under case number 4:11-mc-15. Through the Treasury Offset Program, garnishment actions, and other involuntary enforcement

mechanisms, the United States has collected only $279,308.21[1]. Doc. 41-1 at 15-22. The current debt balance is $1,493,604.86. *Id.* The United States now requests a turnover order in aid of satisfying the judgment.

### A. The United States' Collection Efforts

Defendants have demonstrated a pattern of efforts to avoid paying this judgment. Shortly after the judgment was entered the United States sent demand letters to Defendants. Doc. 41-4 at 9-12. Three weeks later, Henry transferred real estate worth approximately $325,000 to his daughter. Doc. 41-3 at 7-10. The United States sent additional demand letters. Doc. 41-4 at 13-20. The United States maintains that Defendants did not respond to any of the demand letters. *Id.* at 22. After being subpoenaed, Henry eventually appeared at a debtor exam on September 26, 2012. *Id.* Despite showing substantial assets, Henry refused to surrender any assets or enter into a payment arrangement with the United States. *Id.*

The United States has likewise had little success collecting on the judgment through alternative means. It filed the present Application for Writs of Garnishment on November 20, 2012, seeking to garnish Henry's and HCF's property interests held by First National Bank, Mills County State Bank, Rusty Roberson, and Southwestern Farms & Cattle Co., Inc. Doc. 2. Writs of garnishment were later served on Henry's daughter and his wife on July 13 and 18, 2013, respectively. Docs. 22-23. All these efforts collectively resulted in the limited recovery of $279,308.21 previously discussed.

### B. Mills County Lawsuit, Confidential Agreement and Settlement

---

[1] In its motion the United States asserts it has only collected $272,297.22. Doc. 40 at 9. According to the payment history included in its appendix to its motion, this $272,292.22 is the amount collected from Henry individually, Doc. 41-1 at 16, while an additional $7,010.99 was collected from HCF. *Id.* at 12. The Court believes this was an inadvertent mistake as the debt balance of $1,493,604 asserted by the United States is reflected on the payment histories of both defendants. See *Id.* at 12-16.

On June 8, 2012, HCF filed the above mentioned lawsuit against Frieda Johnson and J&J Egg Farm ("J&J") over a land dispute ("Mills County Lawsuit"). Doc. 41-2 at 23-28. The petition alleged that HCF became a 50% owner of J&J when Thurman Johnson, one of the founders of J&J, transferred his interest to HCF. *Id.* at 24-25. The petition alleged "all owners of [J&J] and [HCF] were aware of the transfer and operated under such circumstances. *Id.* at 25. Moreover, the transfer was eventually documented through a Stock Assignment in 2005. *Id.* at 28. The petition further alleged that Henry and Jane Anne Moreland each owned 50% of HCF. *Id.* at 25.

Upon learning of the Mills County Lawsuit the United States filed a Supplemental Application for Writs of Garnishment on October 3, 2014. Doc. 31. The United States sought to garnish HCF's property held by the defendants in the Mills County Lawsuit, as well as McKethan Espinoza, PLLC, the law firm representing HCF in the lawsuit. *Id.* All three answered stating they had no property belonging to HCF nor did they anticipate owing HCF anything in the future. Docs. 34-35.

After pursuing the Mills County Lawsuit for over a year, and just shortly after the writs of garnishments were served on Henry's wife and daughter, the owners of HCF entered into a Confidential Agreement with Mina Martin, the Executrix of the Estate of Thurman Johnson ("the Estate") as well as Thurman Johnson's daughter. Doc. 41-1 at 2-7. The Confidential Agreement established the following:

1) HCF owned the interest in J&J that was the subject of the Mills County Lawsuit
2) Thurman Johnson owned 50% of J&J, which he transferred to HCF
3) HCF owed Henry $150,412.50 and Moreland $94,522.00.
4) The Estate would pursue the Mills County Lawsuit in place of HCF

5) Funds received from the Mills County Lawsuit will pay $150,412.50 to Henry's daughter and $94,522.00 to Moreland. Any remaining funds will be split 50% to Henry's daughter and the rest equally among Thurman Johnson's daughters.

Pursuant to the Confidential Agreement, on October 2, 2013 the Estate of Thurman Johnson filed its Original Petition in Intervention in the Mills County Lawsuit. Doc. 41-3 at 2-5. The stated reason for the Estate's intervention—contrary to HCF's petition and the Confidential Agreement between the Estate and HCF—was a dispute between the Estate and HCF as to whether Thurman Johnson's transfer to HCF was valid. *Id.* at 3. Notwithstanding this alleged dispute, the Estate was represented by the same attorney who was representing HCF in the same lawsuit. See Docs. 41-2 at 27 (identifying Stephen R. McKethan as attorney for HCF) and 41-3 at 4 (identifying Stephen R. McKethan as attorney for the Estate).

A settlement was reached in the Mills County Lawsuit on May 12, 2015. Doc. 41-1 at 9-12. Under the terms of the settlement, the Estate is to receive $600,000 on or before September 15, 2015, and HCF has agreed to release all claims with prejudice and receive no funds or property in return. *Id.* at 11.

## II. Discussion

### A. Legal Authority

The underlying garnishment action was brought pursuant to the Federal Debt Collection Procedures Act ("FDCPA"). Doc. 2; see also 28 U.S.C. § 3205. The FDCPA specifically authorizes the Court to apply the All Writs Act as necessary to support FDCPA post-judgment remedies. See 28 U.S.C. §§ 1651, 3202. The All Writs Act can be used to aid the government in collecting debts and may be used against a defendant or those "in privity" with the defendant

to prevent dissipation or concealment of assets. See, e.g., *United States v. Yielding*, 657 F.3d 722, 727-28 (8th Cir. 2011).

Additionally courts conduct "proceedings . . . in aid of judgment or execution" in "accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). In Texas, a judgment creditor is entitled to "aid from a court of appropriate jurisdiction . . . to obtain satisfaction on the judgment if the judgment debtor owns property . . . that: (1) cannot readily be attached or levied on by ordinary legal process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex. Civ. Prac. & Rem.Code § 31.002(a).

### B. Analysis

Under the broad authority to aid the United States as a judgment creditor in collecting the debt owed by Henry and HCF the Court would have no trouble ordering the turnover of any settlement payment due to Henry or HCF. This matter, however, is complicated by what the United States alleges to be an elaborate scheme to shield assets properly belonging to HCF from the United States' reach. This Court must decide whether settlement proceeds due to the Estate are within this Court's reach such that it can order their turnover as partial satisfaction of Defendants' judgment.

The United States urges two distinct theories that allow the Court to disregard the terms of the Settlement Agreement and find that the proceeds of the settlement are property of HCF. First, the United States argues, under a nominee theory, the Estate was acting as HCF's mere nominee for the purposes of pursuing the lawsuit. Alternatively, the United States argues, under a sham-to-perpetrate-a-fraud theory, the entire scheme of the Confidential Agreement and Settlement Agreement is nothing more than a legal fiction which can be ignored by this Court to

prevent an unjust outcome. Because the Court agrees with the United States' nominee theory, the Court need not consider or decide the United States' sham-to-perpetrate-a-fraud argument.

"A nominee theory involves the determination of the true beneficial ownership of property." *Oxford Capital Corp. v. United States,* 211 F.3d 280, 284 (5th Cir.2000). In other words "a 'nominee' holds legal title to property that really belongs to another who exercises control over and realizes the benefit of it." *United States v. Dolenz,* No. 3-09-CV-1311-O-BD, (N.D. Tex. June 16, 2011) *recommendation adopted* No. 3:09-CV-1311-O, (N.D. Tex. Sept. 15, 2011) (citing *Sumpter v. United States,* 302 F. Supp. 2d 707, 720 (E.D. Mich. 2004). In determining nominee status courts generally consider six factors: (1) whether the nominee paid adequate consideration; (2) whether the nominee took title in anticipation of a lawsuit or occurrence of liabilities; (3) the relationship between the transferor and the nominee; (4) whether the conveyance was recorded; (5) whether the transferor retained possession and control of the property; and (6) whether the transferor continued to the enjoy the benefits of the transferred property." *Oxford,* 211 F.3d at 284 n.1.[2]

The United States argues that applying these factors establishes that the Estate is pursuing the Mills County Lawsuit as HCF's nominee. The Court agrees. Applying the factors one-by-one leaves little room to argue otherwise. First, the Estate paid no consideration in exchange for HCF's interest in J&J. Second, HCF transferred this interest to the Estate within weeks of Henry's wife and daughter being served with the previously discussed writs of garnishments. As soon as it became obvious to Henry and HCF that the United States was expanding or continuing its collection efforts, HCF attempted to shield a substantial asset from

---

[2] Although the majority of the cases involving this nominee theory are tax lien cases, the Court has not found a single case specifically limiting the nominee theory to tax lien cases. Without the benefit of a response, the Court sees no reason why the same theory should not be used in other federal debt collection actions. See *Dexia Credit Local v. Rogan,* No. 02-C-8288, (N.D. Ill. Oct. 9, 2008) (unpublished) (applying similar factors for a nominee theory in a non-tax lien case).

recovery. Third, the nominee is closely related to the transferor. Moreland, who is a 50% owner of HCF, is the sole beneficiary of the estate. By transferring HCF's interest in the property to the Estate, Moreland retains her ownership interest and, by virtue of the Confidential Agreement[3], Henry retains his ownership as well. Not only is the Estate closely related to HCF, thanks to the Confidential Agreement, they are nearly the same entity. Fourth, the conveyance was not recorded. Indeed, the very terms of the Confidential Agreement sought to severely limit those who could learn of its existence. Fifth, HCF's attorney in the Mills County Lawsuit also represented the Estate in the same lawsuit despite an alleged dispute between the two entities. Further, HCF contracted its control of the property interest by spelling out exactly how any potential recovery would be distributed in the Confidential Agreement. Finally, as discussed for the third factor, the transfer from HCF to the Estate was not really a transfer at all, so HCF's enjoyment of its interest in the property remained and the owners of HCF were both scheduled to receive 50% of HCF's interest in J&J, albeit indirectly.

Moreover, the Settlement Agreement term whereby HCF releases its claims with prejudice is wholly inconsistent with HCF's prior position that it owned the 50% interest in J&J as claimed in the Mills County Lawsuit. See § I.B.1 *supra*. The Estate similarly contradicts itself claiming in its petition for intervention that the transfer from Thurman Johnson to HCF is now disputed after agreeing in the Confidential Agreement that HCF is the owner of the 50% interest in J&J claimed in the Mills County Lawsuit. *Id.* The Court does not believe it is by accident that the settlement proceeds make their way to the children of HCF's owners, all while avoiding the reach of the United States. This was an intentional scheme concocted solely to shield a substantial sum of money from the United States' collection efforts.

---

[3] The Confidential Agreement guarantees Henry's daughter 50% of the residual recovery from the Mills County Lawsuit after HCF's debts are paid. See § I.B Supra.

Accordingly, the Court finds the Estate pursued the Mills County Lawsuit on behalf of HCF merely as its nominee. Any benefit due to the Estate under the Settlement Agreement is the property of HCF and, as such, is subject to this Court's authority to aid the United States in obtaining satisfaction of its judgment against Henry and HCF.

### III. Conclusion

For the foregoing reasons, the Court GRANTS the United States' Emergency Motion for Turnover Order. Frieda Johnson is hereby ordered to turnover the $600,000 in settlement proceeds due to be paid to the Estate to the United States for application to its judgment against Henry and HCF.

**IT IS SO ORDERED.**

Signed this 11th day of September, 2015.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE